IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANE DOE | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | |
| ANTHONY'S PIZZA HOLDING | ) | |
| COMPANY, LLC d/b/a ANTHONY'S | ) | |
| COAL FIRED PIZZA | ) | |
| 200 West Cypress Creek Road, | ) | |
| Ste. 220, Fort Lauderdale, FL 33309, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ANTHONY RODRIGUEZ, | ) | |
| Individually | ) | JURY TRIAL DEMANDED |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## COMPLAINT

Plaintiff Jane Doe, by her attorneys, Joseph Garcia and Dolores Ayala of Legal Aid Chicago, complains of Defendant Anthony's Pizza Holding Company, LLC ("Defendant APHC") and Anthony Rodriguez ("Defendant Rodriguez" or "Assistant Manager Rodriguez") (collectively at times referred to as "Defendants") as follows:

### INTRODUCTION

1. Ms. Doe brings this civil rights complaint against Defendant APHC for discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

1

2. Ms. Doe also brings this civil rights complaint against assistant manager Defendant Rodriguez for violations of the Illinois Gender Violence Act, 740 ILCS 82/10 ("IGVA").

3. From December 3, 2018 to July 29, 2019, Ms. Doe worked for Defendant APHC as a server. During this time, Ms. Doe was repeatedly subjected to sexual harassment by Assistant Manager Rodriguez.

4. Assistant Manager Rodriguez's sexual harassment created an intimidating, hostile, and offensive working environment.

5. On March 4, 2020, Ms. Doe filed her Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") seeking redress for this treatment.

6. Defendants are aware of the identity of Ms. Doe. Defendant APHC has participated in the administrative proceedings of the same nature.

7. On July 5, 2023, Ms. Doe received a Notice of Dismissal and Right to Sue from the EEOC. Having exhausted her administrative remedies, Ms. Doe brings this Title VII complaint in federal court. **Exhibit 1.**

## JURISDICTION AND VENUE

8. This Court has jurisdiction over Ms. Doe's Title VII claim pursuant to 28 U.S.C. §§ 1331 and 1343.

9. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Ms. Doe's state law claim which arises out of the same nucleus of operative facts giving rise to the federal law claim.

10. Venue is proper in this District under 28 U.S.C. § 1391 because all of the conduct complained of occurred within this District.

## PARTIES

11. Ms. Doe currently resides in Colorado. At all times relevant hereto, Ms. Doe resided in the State of Illinois. From December 2018 to July 2019, Ms. Doe worked for Defendant APHC in Illinois.

12. Defendant APHC owns and operates pizza restaurants across the United States. At all relevant times, Defendant APHC owned and operated a pizza restaurant in Illinois, including a Chicago area restaurant at which Ms. Doe was employed as a server.

13. Defendant Rodriguez currently resides in Florida. At all times relevant hereto, Defendant Rodriguez resided in the State of Illinois. At all times relevant, Defendant Rodriguez worked as an assistant manager for Defendant APHC and oversaw the operation of the restaurant.

## FACTS COMMON TO ALL COUNTS

14. In 2017, Defendant APHC expanded its operations into Illinois, opening restaurants in the Chicago area.

15. Defendant APHC relocated employees from out of state into Illinois, including Assistant Manager Rodriguez.

16. Upon information and belief, Defendant APHC placed a great deal of trust in Assistant Manager Rodriguez to assist in the successful expansion of its restaurant business into Illinois.

17. In December 2018, Defendant APHC hired Ms. Doe as a server at its Kildeer, Illinois location. At the time of hiring, Ms. Doe was 20-years-old.

18. In her role, Ms. Doe interacted with the general public and other members of Defendant APHC's staff.

19. Between December 2018 and June 2019, Assistant Manager Rodriguez made several sexual comments to Ms. Doe, including but not limited to comments to the effect of, "Let me get a taste," "You're sexy," and "The things I would do to you if you didn't have a boyfriend."

20. Between December 2018 and June 2019, Assistant Manager Rodriguez made these sexual comments to and about Ms. Doe both in person and over social media, including Snapchat.

21. Between December 2018 and June 2019, Assistant Manager Rodriguez made inappropriate sexual comments to Ms. Doe about his personal sex life and the workplace colleagues he had sex with, including a member of Defendant APHC's corporate management.

22. During this time, Assistant Manager Rodriguez also made sexual comments about other female coworkers, including Operating Manager Erika King ("Operating Manager King").

23. On more than one occasion, Assistant Manager Rodriguez called Operating Manager King a "fake lesbian" and made sexual comments about the size of her breasts. These comments were made to Operating Manager King and Ms. Doe.

24. Operating Manager King failed to take any action to address or stop Assistant Manager Rodriguez's sexual conduct in spite of this behavior.

25. This was not the first time that a member of management learned of sexual harassment by Assistant Manager Rodriguez and failed to address it. In November 2018, Operating Manager King learned that a corporate trainer attending a Company-sponsored event at a hotel space procured by the Company in connection with the Kildeer opening was sexually harassed by Assistant Manager Rodriguez.

26. The corporate trainer told Operating Manager King that Assistant Manager Rodriguez had groped her body while at the event. Operating Manager King took no action against Assistant Manager Rodriguez and allowed the matter to go unaddressed.

27. On or around February 6, 2019, Ms. Doe complained to General Manager Annie Schwartz ("General Manager Schwartz") during a team meeting that several coworkers were making inappropriate comments about her and her relationship with her then-boyfriend.

28. General Manager Schwartz ignored Ms. Doe's complaint and responded with words to the effect of, "We're all family. There's no secrets in the restaurant business."

29. In April 2019, Ms. Doe complained to Assistant Manager Lily Scholer ("Assistant Manager Scholer") that Assistant Manager Rodriguez grabbed ahold of and yanked her ponytail as he mumbled words that she could not hear under his breath while he walked away.

5

30. In April 2019, Ms. Doe complained to Assistant Manager Scholer that Assistant Manager Rodriguez was making sexual comments about her relationship with her then-boyfriend, including asking Ms. Doe why she was with someone she could not have sex with.

31. On April 26, 2019, Ms. Doe complained to Assistant Manager Scholer that Assistant Manager Rodriguez had called her a "cunt."

32. Around that same time, Ms. Doe confronted Assistant Manager Rodriguez about an inappropriate sexual comment he made to her a week earlier.

33. In response, Assistant Manager Rodriguez said she was "too sensitive."

34. Also around that same time, Assistant Manager Rodriguez saw Ms. Doe complaining to Assistant Manager Scholer. Assistant Manager Rodriguez responded by scolding Ms. Doe for having complained.

35. Assistant Manager Rodriguez routinely hinted at his close relationships with corporate management and name-dropped several higher-ups in an attempt to scare Ms. Doe into not complaining about his behavior.

36. In May 2019, in the presence of Assistant Manager Scholer, Assistant Manager Rodriguez made sexual comments about Ms. Doe's underwear and touched Ms. Doe's butt while she bent over to clean behind the bar.

37. During Assistant Manager Rodriguez's time working at Defendant APHC's restaurant in Kildeer, Illinois, he frequently provided alcohol to underage staff, including Ms. Doe, in an attempt to gain more influence, trust, and manipulate them.

38. Upon information and belief, during Assistant Manager Rodriguez's time working at Defendant APHC's restaurant in Kildeer, Illinois, it was known to other members of management that Assistant Manager Rodriguez drank on the job and encouraged others to do the same.

39. On June 12, 2019, Ms. Doe was celebrating her 21st birthday with family, friends, and coworkers at Defendant APHC's restaurant.

40. Assistant Manager Rodriguez, Assistant Manager Scholer, Server Mallory Parsons ("Server Parsons"), Operating Manager King, Restaurant Cook Israel ("Cook Israel") and Restaurant Cook Bryant ("Cook Bryant") were all working that night.

41. Assistant Manager Rodriguez insisted to Ms. Doe and the whole staff that they all meet at his apartment after work to continue celebrating Ms. Doe's 21st birthday.

42. After dinner, Ms. Doe's mom drove her home.

43. At or around 10:00pm, Assistant Manager Rodriguez messaged Ms. Doe asking for her address.

44. Shortly after, Assistant Manager Rodriguez arrived at Ms. Doe's mother's house. Ms. Doe got into his car and Assistant Manager Rodriguez drove to a liquor store and then to his apartment located near Defendant APHC's restaurant.

45. When she arrived at Assistant Manager Rodriguez's apartment, Ms. Doe was intoxicated.

46. Upon information and belief, Assistant Manager Rodriguez knew that no one was joining them prior to picking up Ms. Doe and that she would remain alone with him at his apartment.

47. In the early morning of June 13, 2019, Ms. Doe woke up in a panic at or around 6:30 a.m. Assistant Manager Rodriguez was next to her completely naked.

48. Ms. Doe noticed bruises on her body, a scratch on her chest, and her vagina was sore.

49. Ms. Doe did not remember engaging in sexual activity with Assistant Manager Rodriguez.

50. Ms. Doe immediately shook Assistant Manager Rodriguez awake and asked him to drive her home.

51. On the same morning of June 13, 2019, at around 8:00 a.m., Ms. Doe messaged Assistant Manager Scholer asking to talk.

52. Ms. Doe called Assistant Manager Scholer crying and scared. She complained that Assistant Manager Rodriguez had taken advantage of her trust and had raped her.

53. Assistant Manager Scholer responded that she had been worried something was wrong because Ms. Doe sent her several Snapchats throughout the night asking Assistant Manager Scholer to pick her up and pleading for help.

54. Assistant Manager Scholer failed to take any action to address or stop Assistant Manager Rodriguez's sexual conduct in spite of having received Ms. Doe's alarming messages throughout the night.

8

55. On June 15, 2019, Ms. Doe was scheduled to work. Ms. Doe started her shift but left shortly after seeing Assistant Manager Rodriguez.

56. Shortly after leaving, Ms. Doe received a message from Assistant Manager Rodriguez asking if she was okay and whether she had told anybody what had happened. Ms. Doe replied that they needed to talk.

57. On June 15, 2019, Assistant Manager Rodriguez and Ms. Doe agreed to meet at Miller's Ale House.

58. When they arrived at Miller's Ale House, Assistant Manager Rodriguez asked Ms. Doe whether she was going to tell the cops.

59. Assistant Manager Rodriguez described a conversation he had had with a friend, in which his friend had advised Assistant Manager Rodriguez to make sure that Ms. Doe did not "go to the cops."

60. Ms. Doe asked Assistant Manager Rodriguez whether they had had sex.

61. Assistant Manager Rodriguez said to Ms. Doe that he "fucked" her twice and that she was "just lying there." Assistant Manager Rodriguez laughed as he recounted what happened.

62. Assistant Manager Rodriguez then threatened Ms. Doe not to tell Assistant Manager Scholer "or anyone else."

63. On or around June 19, 2019, Assistant Manager Rodriguez told Ms. Doe that he had been promoted by Defendant APHC and was being transferred back to Florida.

64. Throughout the week of June 19, 2019, Assistant Manager Rodriguez repeatedly called and messaged Ms. Doe to "check in on her."

65. Assistant Manager Rodriguez became increasingly controlling of Ms. Doe's time away from work.

66. Assistant Manager Rodriguez called and texted Ms. Doe outside of work, including on social media, to get her attention, to monitor her, and to pressure her to spend time with him alone.

67. On or around June 19, 2019, Assistant Manager Rodriguez Face Timed Ms. Doe.

68. Assistant Manager Rodriguez said he felt bad for what had happened and wanted to talk to her before leaving Illinois.

69. Ms. Doe, feeling pressured from the constant barrage of text messages and phone calls from her supervisor, agreed to meet Assistant Manager Rodriguez at a restaurant.

70. On the phone, Assistant Manager Rodriguez insisted that he could drive them, that he knew where he was going, and that it would be easiest if he drove.

71. Ms. Doe believed that if she did not say "yes" to Assistant Manager Rodriguez, he would fire her or have her fired given his close ties with upper and corporate management.

72. Ms. Doe reluctantly agreed to meet Assistant Manager Rodriguez outside his apartment so that he could drive them to the restaurant.

73. When they arrived at the restaurant, they both sat at the bar. Assistant Manager Rodriguez apologized for what had happened, asked if they would remain friends when he moved to Florida, and began touching her leg.

74. Ms. Doe, anxious and scared, asked Assistant Manager Rodriguez to take her home.

75. Once they got inside Assistant Manager Rodriguez's vehicle, he forcibly kissed Ms. Doe.

76. Ms. Doe pushed him away and guarded herself for the rest of the car ride to his apartment.

77. When they arrived at Assistant Manager Rodriguez's apartment, Ms. Doe badly needed to use the restroom.

78. Ms. Doe asked Assistant Manager Rodriguez if she could use his bathroom.

79. Ms. Doe suffers from irritable bowel syndrome ("IBS") which is triggered by stress and anxiety. As a result, Ms. Doe had an uncontrollable and desperate need to use the restroom.

80. After using the restroom, Ms. Doe walked into the living room and saw Assistant Manager Rodriguez exposing himself.

81. When she turned away from him, Assistant Manager Rodriguez ran into another room.

82. Shocked by what she had seen, Ms. Doe sat on the couch and franticly searched her purse for her car keys and eyeglasses.

83. Suddenly, Assistant Manager Rodriguez charged toward Ms. Doe and forcibly inserted his penis into her mouth.

84. After forcing his penis into Ms. Doe's mouth, Assistant Manager Rodriguez then forcibly removed her clothes and penetrated her vagina with his penis.

85. Ms. Doe was in pain, crying, and screaming for him to stop. Assistant Manager Rodriguez then spit on her and said, "Stop being a baby."

86. Assistant Manager Rodriguez repeatedly abused the authority and the power Defendant APHC had delegated to him by using his supervisory position and age to manipulate and control Ms. Doe both at work and outside of work.

87. Given Assistant Manager Rodriguez's claims that he had had sex with a member of Defendant APHC's corporate management and had close, personal relationships with other members of upper management, Ms. Doe believed additional complaints would be futile or get her fired.

88. During the time between June 26, 2019 to July 3, 2019, Ms. Doe tried to return to work but began to cry uncontrollably upon entering Defendant APHC's restaurant and had to leave.

89. Assistant Manager Rodriguez contacted Ms. Doe during his first week in Florida to tell her that he had informed General Manager Schwartz that "something" had happened between them.

90. Assistant Manager Rodriguez also told Ms. Doe that he was now living with General Manager Schwartz.

91. Assistant Manager Rodriguez's comments left Ms. Doe feeling powerless and anxious that her job was in jeopardy.

92. On or around July 5, 2019, Ms. Doe spoke with Kildeer Restaurant Manager, Daniel Thaxton ("Restaurant Manager Thaxton").

93. Ms. Doe told Restaurant Manager Thaxton that something traumatic had happened and requested a leave of absence, which he approved.

94. Upon information and belief, Restaurant Manager Thaxton knew that Ms. Doe's request for leave involved and/or was caused by Assistant Manager Rodriguez's actions.

95. On July 9, 2019, Ms. Doe reported the two instances of sexual assault to the Palatine Police Department.

96. On July 23, 2019, Ms. Doe petitioned for a Civil No Contact Order against Assistant Manager Rodriguez with the Circuit Court of Cook County, Illinois. The Civil No Contact Order was granted but not served on Assistant Manager Rodriguez.

97. Ms. Doe remained on her unpaid leave of absence until July 29, 2019.

98. On July 27 or 28, 2019, Restaurant Manager Thaxton sent out a group text to all staff for a mandatory meeting on July 29, 2019.

99. The purpose of the meeting was to inform all employees that the Kildeer location was closing effective the next day, July 30, 2019.

100. Ms. Doe has suffered severe and profound emotional distress, trauma, and related psychological effects, among other injuries, due to Assistant Manager

Rodriguez's sexual harassment and sexual assaults of her, for which she has required extensive treatment.

## COUNT I – SEXUAL HARASSMENT

101. Ms. Doe incorporates and re-alleges Paragraphs 11-100 as though fully set forth herein.

102. Title VII makes it unlawful to discriminate against any employee because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1).

103. Ms. Doe is a member of a protected class on the basis of sex. She is a woman.

104. Assistant Manager Rodriguez was Ms. Doe's supervisor.

105. Defendant APHC, through the acts of Assistant Manager Rodriguez, made unwanted sexual advances and sexual comments to and about Ms. Doe, and repeatedly sexually assaulted and battered Ms. Doe.

106. Defendant APHC discriminated against Ms. Doe by subjecting her to unwelcome sexual conduct that was both severe and pervasive. This unwelcome behavior created a hostile work environment that interfered with Ms. Doe's ability to perform her job.

107. Assistant Manager Rodriguez repeatedly used the authority delegated to him by Defendant APHC to control, manipulate, and gain access to Ms. Doe outside of work.

108. The conduct complained of herein resulted in a tangible employment action, in that Assistant Manager Rodriguez's sexual assaults caused Ms. Doe to require and take an unpaid medical leave of absence.

109. As the result of Defendant APHC's horrific treatment of Ms. Doe, she suffered profound emotional distress and psychological trauma, her school grades and attendance slipped, she struggled to find subsequent employment, and she was required to undergo intense and expensive psychological treatment.

110. Ms. Doe suffered significant harm, including but not limited to the following:

   a. Physical pain and suffering;

   b. Severe emotional distress;

   c. Humiliation, mortification, and embarrassment;

   d. Fear and anxiety;

   e. Medical expenses; and

   f. Other injuries and damages and consequences related to or arising out of the harassment to be proven at trial.

WHEREFORE, Jane Doe respectfully requests that this Court enter judgment in her favor against Defendant APHC and award her economic and non-economic damages in an amount this Court deems appropriate under the circumstances, including interest, costs, attorney's fees, and punitive damages.

**COUNT II – VIOLATIONS OF THE ILLINOIS GENDER VIOLENCE ACT**

111. Ms. Doe incorporates and re-alleges Paragraphs 11-100 as though fully set forth herein.

112. The IGVA provides that "[a]ny person who has been subjected to gender-related violence as defined in Section 5 may bring a civil action for damages, injunctive relief, or other appropriate relief against a person or persons perpetrating that gender-related violence." 740 ILCS 82/10.

113. Gender-related violence is defined in section 5 to include an act or threat of violence or "physical aggression satisfying the elements of battery under the laws of Illinois that are committed, at least in part, on the basis of a person's sex;" or an act or threat of "physical intrusion or physical invasion of a sexual nature under coercive conditions." 740 ILCS 82/5.

114. Defendant Rodriguez's acts of touching and sexually assaulting Ms. Doe were committed based upon her sex.

115. Defendant Rodriguez subjected Ms. Doe to physical intrusions and invasions of a sexual nature, as described in detail above.

116. As a result of Defendant Rodriguez's horrific treatment of Ms. Doe, she suffered profound emotional distress and psychological trauma, her school grades and attendance slipped, she struggled to find subsequent employment, and she was required to undergo intense and expensive psychological treatment.

117. Ms. Doe suffered significant harm, including but not limited to the following:

    a. Physical pain and suffering;

    b. Severe emotional distress;

    c. Humiliation, mortification, and embarrassment;

    d. Fear and anxiety;

    e. Medical expenses; and

    f. Other injuries and damages and consequences related and arising out of the harassment and assault to be proven at trial.

WHEREFORE, Ms. Doe respectfully requests that this Court enter judgment in her favor against Defendant Rodriguez and award her economic and non-economic damages in an amount this Court deems appropriate under the circumstances, including interest, attorneys' fees, compensatory and actual damages, and all other relief as the Court deems appropriate.

## JURY DEMAND

Ms. Doe hereby demands trial by jury.

Dated: September 29, 2023

                              Respectfully submitted,
                              Plaintiff Jane Doe

                              /s/ Joseph Garcia
                              _____

                              Joseph Garcia
                              Legal Aid Chicago
                              120 S. LaSalle Street, Suite 900
                              Chicago, Illinois 60603
                              (312) 347-8350
                              jgarcia@legalaidchicago.org

Dolores Ayala
Legal Aid Chicago
120 S. LaSalle Street, Suite 900
(312) 229-6353
dayala@legalaidchicago.org

*Attorneys for Plaintiff*

18